# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CALVARY BAPTIST CHURCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-15-1283-M ) |
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

## **ORDER**

This matter is on the Court's March 2017 trial docket.

Before the Court is Defendant's Motion for Summary Judgment with Regards to Plaintiff's Bad Faith Claim and Brief in Support, filed December 30, 2016. On January 6, 2017, plaintiff responded, and on January 13, 2017, defendant replied. Also before the Court is Defendant's, Church Mutual Insurance Company, Motion for Spoliation and Sanctions Against Plaintiff, Calvary Baptist Church, for Willful Destruction of Evidence and Brief in Support, filed January 10, 2017. On January 11, 2017, plaintiff responded, and on January 18, 2017, defendant replied. Based on the parties' submissions, the Court makes its determination.

I.   Introduction

Plaintiff Calvary Baptist Church ("Calvary") carried its property insurance with defendant Church Mutual Insurance Company ("CMIC") for thirty-three (33) years, originally contracting with CMIC in March of 1980. In the late spring of 2013, Calvary contacted CMIC regarding two claims of loss. Initially, in May of 2013, Calvary made a claim to CMIC after its four HVAC units were vandalized. Two different HVAC companies evaluated the vandalized units. Slater Mechanical, a company Calvary alleges was sent by CMIC to evaluate the damage

to the HVAC units, submitted a bid for replacement of the four HVAC units at a cost of $12,000. *See* Resp. Exhibit 5, Slater Mechanical's bid for replacing four HVAC units. Stevens Refrig. and Heating, Inc. ("Stevens Refrig."), a company Calvary contacted, submitted a bid with two options: (1) to replace one HVAC unit and repair the remaining three at a cost of $5,491, which Stevens Refrig. documented it did not recommend; or (2) to replace all four units at a cost of $17,087.00. *See* Resp. Exhibit 6, Stevens Refrig.'s bid for replacing or repairing four HVAC units. Based on the Stevens Refrig.'s estimate for replacing one HVAC unit and repairing the remaining three units, CMIC paid Calvary $4,491.00 on its vandalism claim. However, based on the recommendations of both Slater Mechanical and Stevens Refrig., Calvary used the $4,491.00, paid by CMIC, as a down payment to have all four HVAC units replaced and paid the remaining $13,000 for the HVAC units on its own.

On June 6, 2013, Calvary contacted CMIC after a wind and hail storm allegedly damaged its roof, causing rainwater to leak in the interior building. Calvary alleges that CMIC instructed it to contact Service Master to assist with removing the rainwater from its interior building; however, Service Master declined to do the job since it was too small for them. After Service Master declined the job, CMIC told Calvary to hire a local business to remove the water. As instructed, Calvary hired a local business to remove the rainwater and presented the bill to CMIC.

On June 20, 2013, CMIC sent independent adjuster, Trey Roberts ("Roberts"), to inspect Calvary's property damages resulting from the storm, including the roof, and on June 24, 2013, CMIC sent Mark Stein ("Stein"), a Building Envelope Expert from the Guardian Group, Inc., to inspect Calvary's roof to determine if any reported damage was associated with high wind or other storm related conditions and subsequent internal damage due to water infiltration. Calvary

2

had several roofing companies come and inspect the roof as well. All roofing companies, sent by Calvary and CMIC to inspect Calvary's roof, concluded that the source of the leaking was due to edge separations on the roof. Based on Roberts' inspection and a report issued by Stein, CMIC determined that the damage was caused by negligent installation of the roofing products and offered Calvary $21,106.60 for the damage to the roof and denied Calvary's claim as to the interior water damage since the damage was not caused by weather elements.[1] Calvary disputes that the damage was due to negligent installation of the roof and maintains that the roof was damaged from a hail and wind storm that occurred on or around June 4 or 5, 2013.[2]

Calvary filed this action on November 18, 2015, initially alleging a breach of contract claim against CMIC. On August 22, 2016, Calvary filed its Amended Complaint alleging a bad faith claim as well against CMIC. CMIC now moves this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56, as to Calvary's bad faith claim. Further, CMIC requests this Court impose sanctions on Calvary for not preserving the vandalized HVAC units after they were replaced with the new units, in anticipation of this litigation.

---

[1] Pursuant to Calvary's policy with CMIC, CMIC precluded coverage to:

> [Damage of the] interior of any building or structure, caused by or resulting from rain, snow, sleet, ice or dust, whether driven by wind or not, unless:
> > The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters . . . .

Resp. Ex. 7, Policy No.: 093189-02-558377, Causes of Loss - Special Form at 4.

[2] In his report, Stein reported that there were no reports of hail or high wind within Garfield County between May 31, 2013 and June 2, 2013. Calvary maintains that the weather event occurred on or around June 4 or 5, 2013, and that Stein researched the wrong dates for weather activity.

II.  Motion for Sanctions

CMIC asserts this Court should enter judgment in favor of it on Calvary's bad faith claim regarding the vandalized HVAC units, since Calvary failed to produce the vandalized HVAC units when requested for examination during this litigation. CMIC specifically contends that Calvary intentionally, willfully, and maliciously destroyed the vandalized HVAC units. Calvary contends that the vandalized HVAC units were not intentionally destroyed but were taken to the dump by the HVAC repairman after they were replaced with new units back in 2013, two years prior to this litigation being filed.

"A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009). "Because of the harshness of dismissal, however, due process requires that the violation be predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Id.* (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995)). Further,

> While . . . there is no rigid test for determining when such a sanction is appropriate, . . . a district court ought to evaluate five factors before imposing a dismissal sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Id.*

Having carefully reviewed the parties' submissions, the Court finds that no sanctions should be imposed on Calvary for disposing of the vandalized HVAC units. Specifically, the Court finds that CMIC was not prejudiced when it was unable to inspect the vandalized HVAC units once this litigation began, because CMIC sent a claims adjuster out to inspect the

4

vandalized HVAC units at the time Calvary made the claim, prior to the initiation of this lawsuit. At that time, CMIC gathered enough evidence from the vandalized HVAC units to determine that only one needed replacing and the other three could be repaired. Further, CMIC failed to provide the Court with any information as to how its inspection of the vandalized units two years later would be any different from its initial inspection. The Court finds it was reasonable for Calvary to dispose of the vandalized units after they were replaced with new units, and further, that Calvary did not act in a malicious or intentional manner in doing so. Therefore, the Court finds CMIC's motion for sanctions against Calvary should be denied.

III.  Motion for Summary Judgment

   A.  Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

B.  Bad Faith Claim

CMIC asserts that Calvary's bad faith claim should fail as a matter of law, as the parties' legitimate dispute as to what Calvary is owed based on its losses, pursuant to its policy with CMIC, precludes Calvary from bringing a bad faith claim, and that Calvary has failed to present any evidence that CMIC acted in bad faith in the denial of payment for Calvary's losses.

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1978). In so doing, the court held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at 904. The court further recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the insurer's actions must be evaluated in light of the facts the insurer knew or should have known at

the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. *Oulds*, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id.* at 612 (internal quotations and citation omitted). Thus, "[t]he investigation of a claim may in some

7

circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1442.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Calvary and viewing all reasonable inferences in Calvary's favor, the Court finds that Calvary has presented sufficient evidence to create a genuine issue of material fact as to whether CMIC acted in bad faith when it denied Calvary's claim of loss with respect to its vandalized HVAC units and the damage to its roof and the interior rainwater damage that resulted. Specifically, as to the vandalized HVAC units, both CMIC and Calvary hired HVAC service repair companies to come and inspect the vandalized units. Calvary presented evidence from both companies recommending that the units be replaced.[3] Specifically, on Stevens Refrig.'s bid, the company stated on the invoice that replacing one of the vandalized units and repairing the other three was not recommended. The Court finds that at the time CMIC made its determination regarding Calvary's vandalism claim, it knew or should have known that it was not recommended to only replace one HVAC unit and repair the remaining three. Therefore, a reasonable juror could find that CMIC acted in bad faith when it pursued the un-recommended option of replacing one of the vandalized HVAC units and repairing the remaining three.

Further, as to the denial to replace Calvary's roof and to reimburse Calvary for the removal of the rainwater in its interior building, CMIC found that Calvary's roof was damaged due to negligent maintenance of the roof and not a wind and hail storm, precluding coverage of the interior damage due to the rainwater leak. CMIC based its denial on the inspections of Roberts and the report from Stein. Specifically, Stein's report detailed the damage to Calvary's

---

[3] The Court would note that CMIC failed to mention or present any evidence on the service repair company it sent out to inspect the vandalized HVAC units, Slater Mechanical, who submitted a bid for the vandalized HVAC units to be replaced.

three buildings and the interiors of buildings 2 and 3. Further, the report stated that based on meteorological reports, there was no reported activity of hail or high wind within Garfield County and Enid, Oklahoma, between May 31 and June 2, 2013.

Calvary disputes CMIC's assertions that its roof was negligently maintained and offers as evidence its own report from its retained bad faith expert Arthur T. Bates ("Bates"), with A.T. Bates Insurance Consulting, LLC. Bates' report identified the fact that CMIC, Roberts, as well as other adjuster companies, sent out by CMIC, involved with the inspection of Calvary's roof and interior rainwater damage, were not licensed in Oklahoma, through the Oklahoma Insurance Department, a fact that CMIC does not dispute. *See* Resp. Ex. 1, A.T. Bates Insurance Consulting, LLC Bad Faith Report. Further, Calvary asserts that CMIC investigated the wrong dates of the hail and wind storm. Calvary contends that the hail and wind storm, which allegedly damaged its roof, occurred on June 4 or 5, 2013; however, CMIC presented evidence in Stein's report that no high winds or hail were reported in the area on May 31 through June 2, 2013. Further, Stein's report documented evidence of hail impact craters on building 3 and hail damage on the exterior AC units. *See* Mot. Summ. J., Ex. 3 Guardian Group, Inc. Damage Assessment Survey at 4. Based on the evidence presented, the Court finds that at the time CMIC made a determination regarding Calvary's claim for its roof and interior rainwater damage, CMIC knew or should have known it sent unlicensed adjusters out to evaluate Calvary's claim, and that, considering Stein's report indicated building 3 and the AC units had evidence of hail, it failed to investigate the date of the storm reported by Calvary. Therefore, a reasonable jury could find that CMIC acted in bad faith when it denied Calvary's claim to replace its roof and reimburse it for the interior rainwater damage and removal. Therefore, the Court finds that CMIC's motion for summary judgment should be denied.

IV.     Conclusion

Accordingly, for the reasons set forth above, the Court DENIES CMIC's Motion for Summary Judgment with Regards to Plaintiff's Bad Faith Claim and Brief in Support [docket no. 72] and CMIC's Motion for Spoliation and Sanctions Against Plaintiff, Calvary Baptist Church, for Willful Destruction of Evidence and Brief in Support [docket no. 82].

**IT IS SO ORDERED this 14th day of February, 2017.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE